# Illinois Official Reports

## Appellate Court

---

### *In re R.D.*, 2021 IL App (1st) 201411

---

| | |
|---|---|
| Appellate Court Caption | *In re* R.D., O.W., J.F., Mi. S., Ma. S., J.S., C.S., E.T., Ce. P., and Co. P., Minors (The People of the State of Illinois, Petitioner-Appellee, v. N.D., M.F., T.T., and S.M., Respondents-Appellants). |
| District & No. | First District, Sixth Division<br>Nos. 1-20-1411, 1-21-0099, 1-21-0142, 1-21-0196 cons. |
| Filed | August 27, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 17-JA-340, 18-JA-003, 14-JA-225, 15-JA-1177, 15-JA-1178, 16-JA-1002, 17-JA-1313, 16-JA-522, 18-JA-412, 18-JA413; the Hon. Bernard J. Sarley, the Hon. Robert Balanoff, and the Hon. Kimberly Lewis, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Sharone R. Mitchell Jr., Public Defender, of Chicago (James Stephens Jacobs, Frank M. Adams, Marsha Watt, and Claudette Greene, Assistant Public Defenders, of counsel), for appellants.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, Ashlee Cuza, and Brian A. Levitsky, Assistant State's Attorneys, of counsel), for the People. |

Charles P. Golbert, Public Guardian, of Chicago (Kass A. Plain, Jean M. Agathen, and Kina N. Arnold, of counsel), guardian *ad litem*.

Panel          JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Connors and Oden Johnson concurred in the judgment and opinion.

**OPINION**

¶ 1      In this consolidated appeal, the respondents challenge the circuit court's determination to terminate their parental rights. The sole issue raised on appeal is whether the trial court violated respondents' due process rights by using audio-video conferencing to conduct the termination proceedings. For the following reasons, we affirm.

¶ 2                        I. JURISDICTION

¶ 3      The circuit court entered its final judgment terminating respondents' parental rights, and each filed a timely notice of appeal from that determination. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 307(a)(6) (eff. Nov. 1, 2017), governing appeals from a judgment terminating parental rights under the Adoption Act (750 ILCS 50/5 (West 2016)).

¶ 4                        II. BACKGROUND

¶ 5      Respondents contend that the trial court's use of Zoom to conduct their termination hearings violated their due process rights. We note that respondents do not challenge the court's findings at the termination hearing, nor do they argue that specific facts of their cases rendered Zoom videoconferencing unconstitutional as applied to them. Therefore, we set forth only those facts necessary to resolve the sole issue on appeal.

¶ 6      In early March 2020, the circuit court of Cook County canceled or imposed restrictions on in-person court appearances due to the COVID-19 pandemic. The administrative office of the circuit court issued a general administrative order that, "except as expressly provided below or in extraordinary or compelling circumstances, all matters in all Districts and Divisions of the court shall be conducted by videoconference." Cook County Cir. Ct. Gen. Adm. Order 2020-07 (Mar. 23, 2021). As a result, proceedings held on the termination of parental rights were conducted through Zoom videoconferencing software. The hearings challenged here took place between December 9, 2020, and January 28, 2021.

¶ 7      Respondents objected to the use of Zoom, arguing that their right to maintain a parental relationship with their children was a fundamental liberty interest protected by the due process clause of the Illinois and United States Constitutions. Specifically, they argued that the termination proceedings conducted through Zoom deprived them of their right to confront witnesses against them and their right to effective assistance of counsel. The circuit court in all cases overruled their objections and denied their motions for a continuance.

¶ 8        On December 9, 2020, the trial court in cases numbered 17JA00340 and 18JA00003 (case No. 1-20-1411 on appeal) ruled:

> "As of yesterday, according to the latest information from the Office of the Chief Judge, 211 employees, 79 staff members at the Juvenile Temporary Detention Center and 69 residents at the Juvenile Temporary Detention Center as well as 17 judges have tested positive for COVID-19. This includes court reporters, court clerks, and employees of the Office of the Public Guardian. As of yesterday, over 280,000 Americans have died from COVID-19.
>
> There is a vaccine that apparently is close to being able to be administered, but we're not sure when that is actually going to be available. And there is certainly no cure to the disease. And over the last two months, cases have dramatically risen not only in the Chicago area but all over the country—all over this country.
>
> The Illinois Supreme Court, the Office of the Chief Judge, and the Presiding Judge of the Child Protection Division have conversed upon the court discretion to either conduct some types of in-person hearings in certain cases or to continue with remote hearings.
>
> During my earlier statement about the virus and the pandemic, I refuse to put any employee of the Cook County court system or anyone that comes in contact with the court system in danger involuntarily. Furthermore, I believe that conducting this type of hearing remotely would not deprive any of the parties of their right to a full and fair hearing.
>
> I've been conducting remote hearings on all cases since the court shut down in March of 2020. My ability to evaluate the credibility of witnesses has not been negatively impacted by remote versus in-person hearings. In situations in which a party or a witness is broken up or been rendered temporarily inaudible due to a connection issue, and that's happened already today like in other cases, the situation has been resolved so that the person could be heard and understood before moving on with the hearing.
>
> As I said, we were able to do that in a previous case this morning. This hearing will be conducted so as to ensure that due process rights of the parties are maintained. The Court will ensure that all witnesses called to testify are alone and not subject to being coached. The Court will ensure that witnesses are not using notes, documents or electronics while testifying and the only properly admitted exhibits are viewed by the witnesses if necessary.
>
> The Court will give counsel every opportunity to confer with their clients before, during or after witness examinations so that effective assistance of counsel will be provided.
>
> In the past, witnesses in these types of proceedings have testified via telephone or Skype. Their credibility has been subjected to cross examination, properly admitted documentation including service plans and service reports. This same type of effective cross examination can be used in the case at bar in addition to the words, appearance, and mannerisms of witnesses to test their credibility.

Accordingly, the objection to conducting this TPR trial by video app is respectfully overruled… As I said earlier but it bears repeating. I will not put employees of the court system or those whose paths took them to the juvenile court in danger involuntarily."

The court in the other cases expressed similar reasoning, noting that courts continued to conduct Zoom hearings and that it would give counsel every opportunity to confer with their clients before, during, and after witness examination. They also stated that respondents would have adequate access to a computer.

¶ 9 Following the Zoom hearings, each respondent was found unfit, and the court determined that it would be in the minors' best interests to be freed for adoption. Respondents filed this appeal.

¶ 10                                              III. ANALYSIS

¶ 11 Respondents contend that they have a constitutional right to confront witnesses against them in person and that the Zoom hearings interfered with that right. They argue that, because they could not exercise their right to confrontation at the termination hearings, they were deprived of their fundamental right as parents without due process. To resolve the issue on appeal, we must first address whether respondents have a constitutional right to confront witnesses in person at a hearing to terminate parental rights.

¶ 12 The sixth amendment confrontation clause provides that, in *criminal* prosecutions, the accused shall have the right to confront the witnesses against him or her. U.S. Const., amend. VI. The confrontation clause in the Illinois Constitution mirrors the sixth amendment clause. *People v. Lofton*, 194 Ill. 2d 40, 53 (2000). Respondents cite *In re K.L.M.*, 146 Ill. App. 3d 489 (1986), as support that the confrontation clause applied to their civil termination proceedings.

¶ 13 The court in *K.L.M.* noted that the sixth amendment confrontation clause directly applied to criminal prosecutions. It recognized, however, that the clause had also been applied to civil cases "involving procedures before administrative agencies." *Id.* at 494-95. The court found no such case involving purely civil proceedings in a state court, and where the clause had been applied in administrative proceedings, there had been a "gross" deviation from fair procedure. *Id.* at 495. It concluded that the "confrontation rights of a party to a civil case are not as complete as those of an accused in a criminal case." *Id.* Therefore, to the extent "confrontation rights *may* be an aspect of due process in civil proceedings, the confrontation clause need not be" strictly applied. (Emphasis added.) *Id.* In their briefs, respondents make no distinction between a criminal defendant's sixth amendment confrontation right and the narrower confrontation right applicable to civil proceedings considered by the court in *K.L.M.*

¶ 14 Furthermore, our supreme court has held that, even in a criminal proceeding, the requirement of face-to-face confrontation "is not absolute." *Lofton*, 194 Ill. 2d at 59. Rather, the United States Supreme Court has "carved out a narrow exception when denial of face-to-face confrontation is necessary to further an important public policy" as the necessities of the case require. *Id.* (citing *Maryland v. Craig*, 497 U.S. 836, 857 (1990)). *Craig* held that "the Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation." *Craig*, 497 U.S. at 857. When evaluating whether the alternate procedure complied with the confrontation clause, courts consider whether the procedure (1) impinged upon the truth-seeking purpose of the clause and (2) was necessary to further an important state interest. *Lofton*, 194 Ill. 2d at 58.

¶ 15 At the Zoom termination hearings, respondents were represented by counsel and had the opportunity to be present, to be heard, to present evidence, and to cross-examine the witnesses against them. While in-person testimony and cross-examination are preferred (*id.* at 56), respondents and their counsel could view and hear the witnesses as they testified. The trial court found that its "ability to evaluate the credibility of witnesses has not been negatively impacted by remote versus in-person hearings." The court also made certain "that all witnesses called to testify are alone and not subject to being coached *** [and] that witnesses are not using notes, documents or electronics while testifying and the only properly admitted exhibits are viewed by the witnesses if necessary." The presence of these elements "adequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony." *Craig*, 497 U.S. at 851. We find that, even if we view respondents' confrontation rights under the more expansive criminal standard, the trial court's use of Zoom to conduct hearings did not impinge upon the truth-seeking purpose of the confrontation clause.

¶ 16 We also find that the use of Zoom was necessary to further important state interests. Significantly, Zoom was used to conduct these hearings only because Illinois was in the grips of the COVID-19 pandemic and, at the time, a vaccine was not available. Given the extraordinary challenges presented by the pandemic, Zoom hearings enabled courts to conduct business while keeping people safe from a deadly virus that spreads easily through in-person interactions. The government also has an interest in the welfare of minors, which corresponds to the minor's interests in his or her own well-being and living in a stable environment. *People v. R.G.*, 131 Ill. 2d 328, 354 (1989). The end of the pandemic remains uncertain, and despite the existence of vaccines, new variants threaten to dismantle plans for reopening the courts for in-person hearings. Keeping children in limbo, particularly when they have already spent years in the system, would not further the State's interest in their welfare.

¶ 17 For these reasons we find that, to the extent respondents have a confrontation right under the Adoption Act, the termination hearings conducted via Zoom did not infringe upon that right.

¶ 18 Respondents also contend that the Zoom hearings violated their right to procedural due process. They argue that, without an in-person hearing, their counsel could not effectively assess the credibility of witnesses through cross-examination by observing their demeanor and body language. They also contend that during Zoom hearings the trial court could not effectively assess the credibility of witnesses because "it is impossible to monitor whether one or more unauthorized individuals were outside the view of the audio-video camera affecting witness testimony."

¶ 19 Fundamentally, procedural due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner." (Internal quotation marks omitted.) *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The Supreme Court recognized that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." (Internal quotation marks omitted.) *Id.* at 334. In determining whether the procedure provided was constitutionally sufficient, courts consider and balance the following factors: (1) the private interest affected, (2) the risk of erroneous deprivation of the interest by using the procedure and the probable value, if any, of additional or substitute safeguards, and (3) the governmental interests involved. *Id.* at 335.

¶ 20 It is undisputed that respondents' right to maintain a parental relationship with their children is a significant liberty interest recognized by courts. *In re D.W.*, 214 Ill. 2d 289, 310-11 (2005). As for the second *Mathews* factor, we have already found that the use of Zoom gave respondents a fair opportunity to assess a witness's credibility through cross-examination, thus satisfying the confrontation clause. Counsel conducted a contemporaneous cross-examination and, through the monitor, counsel could observe the witness's demeanor and body language. The presence of these elements of confrontation "adequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony." *Craig*, 497 U.S. at 851. Even if we accept that the physical presence of a witness enhances credibility determinations, the trial court found that its observation of a witness's demeanor was not significantly compromised by the use of video testimony.

¶ 21 As for the third factor, the government has a significant interest in the minors' well-being. Children have an interest in a stable home life free from the "uncertain and fluctuating world of foster care." *In re D.T.*, 212 Ill. 2d 347, 365 (2004). One of the minors had been in the system since 2014. Given the seriousness of the continuing COVID-19 pandemic and the uncertainty of when it would be safe to hold in-person hearings, we must weigh this factor accordingly. When balancing these factors—the interest involved, the slight risk that the Zoom hearings affected respondents' confrontation rights, and the governmental interests at stake—we find that the use of Zoom to conduct the hearings below did not violate respondents' procedural due process rights.[1]

¶ 22 Respondents disagree, citing *In re C.M.*, 319 Ill. App. 3d 344 (2001), as support. In *C.M.*, case manager Allison Greenwald testified at the termination hearing by telephone, and the State provided no explanation for her absence from the courtroom. *Id.* at 350. The respondents objected, but the trial court overruled their objection. The court explained:

> " 'I think the only thing that it actually causes is not rigorous cross-examination. It just causes me not to be able to entirely evaluate the demeanor of the witness as the witness testifies. And for that, I will allow it for weight. And that will also necessarily impact the weight of the testimony ***.' " *Id.*

¶ 23 On appeal, the respondents argued that allowing Greenwald to testify by telephone violated their due process rights. *Id.* at 353. This court noted that "the trial court placed great reliance on Greenwald's testimony in making its finding that respondents had failed to make reasonable progress toward the return of the minors under section 1(D)(m)." *Id.* at 354. The trial court, however, was unable to determine what documents she used or if anyone was in the room with her. It also could not assess her demeanor or body language. *Id.* at 355. With no reason proffered for her absence, "the risk that respondents were erroneously deprived of their parental interest *** was heightened by Greenwald's physical absence from the courtroom." *Id.*

¶ 24 *C.M.* is distinguishable. The witnesses in respondents' cases did not testify by telephone. Instead, they testified by video through Zoom. As such, counsel was able to see and hear them as they testified and during cross-examination. While the court could not view everything in

---

[1]While not binding on this court, we note that other jurisdictions have upheld the use of Zoom or videoconferencing to conduct civil proceedings remotely. See *In re R.J.B.*, 2021 COA 4; *In re TJH*, 2021 WY 56, 485 P.3d 408 (2021); *In re Doe I*, 480 P.3d 143 (Idaho Ct. App. 2020).

the room with the witness, it could observe his or her demeanor for clues that something might be amiss. The court in *C.M.* could not see Greenwald at all as she testified. Therefore, the concerns expressed by the court in *C.M.* do not apply with the same force here.

¶ 25 Also, cogent reasons existed below for holding the termination hearings via Zoom. The COVID-19 pandemic made it necessary for courts to conduct hearings remotely except in "extraordinary or compelling circumstances." See Cook County Cir. Ct. Gen. Adm. Order 2020-07 (Mar. 23, 2021). With no end to the pandemic in sight at the time, the minor's interest in a stable home had to be given due consideration. *C.M.* even recognized that time is of the essence in these cases, finding that the third *Mathews* factor weighed in favor of the children. *C.M.*, 319 Ill. App. 3d at 356. In contrast, the State in *C.M.* gave no reason for the alternate procedure.

¶ 26 We emphasize that, while we find the use of Zoom to conduct a termination hearing is not categorically prohibited, there may be circumstances where a video hearing in place of an in-person hearing does violate a parent's due process rights. However, we do not address that issue here since respondents make no fact-specific arguments to support their due process claim.

¶ 27 Respondents alternatively argue that the trial court should have granted their motions for a continuance. They contend that, at the time of the hearings, a vaccine was being developed and continuing the matter until the court could conduct in-person hearings would not have imposed significant costs. As support, they cite *In re C.J.*, 272 Ill. App. 3d 461 (1995).

¶ 28 In *C.J.*, the respondent was incarcerated and could not personally attend the termination hearing. *Id.* at 463. She filed a motion to continue the hearing set for July 19, 1994, to May 1, 1995, the date she would be released from prison. The trial court denied her motion. *Id.* The hearings proceeded without the respondent's participation, and the court ordered that her parental rights be terminated. *Id.* at 464. The respondent appealed, contending that her statutory and constitutional rights were violated where the hearings occurred in her absence without giving her an opportunity to be heard. *Id.* The appellate court found that, although a continuance until the respondent's release from prison was not necessary, "other, less time-consuming methods" would have afforded her an opportunity to be heard. *Id.* at 466.

¶ 29 *C.J.* is distinguishable for a couple of reasons. First, the respondent in *C.J.* was not present at the hearings either by telephone or by video. Second, the court in *C.J.* found that the proceedings need not wait until her release because "other, less time-consuming methods" existed that would allow the respondent to exercise her rights. Here, respondents wanted the proceedings continued until the court could hold in-person hearings. That option would require continuance of the proceedings until the end of the pandemic or until use of a vaccine lessened the risk of in-person hearings. At the time the Zoom hearings took place, between December 2020 and January 2021, neither scenario seemed certain in the foreseeable future.

¶ 30 There is no absolute right to a continuance under the Act. *In re K.O.*, 336 Ill. App. 3d 98, 104 (2002). We will not overturn the trial court's denial of a continuance absent an abuse of discretion, and we find no abuse of discretion here. Even if the trial court had abused its discretion, denial of a continuance is not grounds for reversal unless respondents have been prejudiced by the denial. *In re M.R.*, 305 Ill. App. 3d 1083, 1086 (1999). Respondents make no argument in their brief that they were prejudiced by the denial. In their reply brief, respondents generally argue that a COVID-19 vaccine had been approved and was being distributed in Cook County by February 2021 and that in-person jury trials began again in

criminal cases in March 2021. They make no connection, however, between those facts and their cases or explain how they were prejudiced.

¶ 31                                    IV. CONCLUSION

¶ 32            For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 33            Affirmed.