2022 IL App (4th) 220174-U

NOS. 4-22-0174, 4-22-0175, 4-22-0176, 4-22-0177 cons.

NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 28, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* J.J., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
| Petitioner-Appellee, | ) | No. 19JA2 |
| v.      (No. 4-22-0174) | ) | |
| Tabitha J., | ) | |
| Respondent-Appellant). | ) | |
| | ) | |
| *In re* Je.J., a Minor | ) | |
| | ) | No. 19JA3 |
| (The People of the State of Illinois, | ) | |
| Petitioner-Appellee, | ) | |
| v.      (No. 4-22-0175) | ) | |
| Tabitha J., | ) | |
| Respondent-Appellant). | ) | |
| | ) | |
| *In re* T.J., a Minor | ) | |
| | ) | No. 19JA4 |
| (The People of the State of Illinois, | ) | |
| Petitioner-Appellee, | ) | |
| v.      (No. 4-22-0176) | ) | |
| Tabitha J., | ) | |
| Respondent-Appellant). | ) | |
| *In re* Tr.J., a Minor | ) | |
| | ) | No. 19JA5 |
| (The People of the State of Illinois, | ) | |
| Petitioner-Appellee, | ) | |
| v.      (No. 4-22-0177) | ) | Honorable |
| Tabitha J., | ) | Mary Linn Green, |
| Respondent-Appellant). | ) | Judge Presiding |

JUSTICE TURNER delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court did not err by denying respondent's motion to continue the best-interests hearing, and its findings were not against the manifest weight of the evidence.

¶ 2    In September 2020, the State filed motions for the termination of the parental rights of respondent, Tabitha J., as to her minor children J.J. (born in September 2015), Je.J. (born in February 2014), T.J. (born in February 2010), and Tr.J. (born in February 2008). The Winnebago County circuit court held the fitness hearing and found respondent unfit in October 2021. After the best-interests hearing, the court found it was in the minor children's best interests to terminate respondent's parental rights.

¶ 3    Respondent appeals, asserting the circuit court (1) abused its discretion by denying her motion to continue the best-interests hearing, (2) erred by finding her unfit, and (3) erred by finding it was in the minor children's best interests to terminate her parental rights. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5    J.J. and Je.J.'s father is Jeffrey J., who filed separate appeals in case Nos. 4-22-0131 and 4-22-0132, and T.J. and Tr.J.'s father is Thomas M., who did not file an appeal.

¶ 6    In January 2019, the State filed separate petitions for the adjudication of wardship of the minor children. The petitions alleged the minor children were neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2018)) because their environment was injurious to their welfare based on (1) respondent and Jeffrey having engaged in domestic violence in front of them, (2) respondent's substance-abuse problem that prevented her from properly parenting, and (3) respondent's mental-health problems that prevented her from properly parenting. On May 8,

2019, the circuit court held a joint adjudication and dispositional hearing. Respondent admitted the minor children were neglected under section 2-3(1)(b) based on her substance-abuse problem. The circuit court accepted respondent's admission and adjudicated the minor children neglected based on respondent's substance-abuse problem and dismissed the other two counts. Thereafter, the assistant state's attorney noted an agreement existed that the minor children's parents should be found unfit, unable, or unwilling to care for, protect, train, or discipline the minor children; the minor children should be made wards of the court; and the Department of Children and Family Services (DCFS) should be appointed as the minor children's guardian and custodian. The court accepted the agreement and entered a written dispositional order consistent with the agreement.

¶ 7 In September 2020, the State filed a motion to terminate the parental rights of respondent and the fathers of the minor children. As to respondent, the motion asserted respondent failed to (1) maintain a reasonable degree of interest, concern or responsibility as to each minor child's welfare (750 ILCS 50/1(D)(b) (West 2020)); (2) make reasonable efforts to correct the conditions that were the basis for each minor child's removal during any nine-month period after the neglect adjudication (750 ILCS 50/1(D)(m)(i) (West 2020)); and (3) make reasonable progress toward each minor child's return during any nine-month period after the neglect adjudication (750 ILCS 50/1(D)(m)(ii) (West 2020)). The relevant nine-month periods for the last two allegations were October 29, 2019, to July 29, 2020, and December 9, 2019, to September 9, 2020.

¶ 8 On November 20, 2020, the circuit court commenced the fitness hearing. The court admitted the State's exhibit No. 6 (DCFS's April 20, 2018, indicated findings against respondent and Jeffrey for substantial risk of physical injury/environment injurious to health and

welfare by neglect) and State's exhibit No. 7 (DCFS's September 28, 2018, indicated findings against respondent for inadequate supervision). The court resumed the fitness hearing on December 16, 2020, and the State presented the testimony of Megan Denk, the child welfare specialist assigned to the case since April 2019. In addition to Denk's testimony, the State presented four service plans with the following dates: (1) August 20, 2019; (2) April 12, 2019; (3) February 14, 2020; and (4) August 7, 2020. No objections were raised to the admission of the service plans. The evidence relevant to the issues on appeal follows.

¶ 9        Denk testified one of the reasons the minor children came into protective custody was respondent's substance-abuse issues. Respondent was asked to complete domestic-violence services, a substance-abuse assessment, individual counseling, and parenting education. Respondent never completed a substance-abuse assessment but reported she was on a waitlist for inpatient substance-abuse treatment. Respondent was also requested to do drug drops but did not consistently do them. As to counseling, respondent completed an updated mental-health assessment and briefly engaged in family counseling at the end of 2019. She had not engaged in any counseling in 2020. Respondent had also not completed a domestic-violence assessment. Respondent did consistently visit with the minor children. Denk further testified respondent never received unsupervised visitation. Due to respondent's substance abuse and lack of engagement in domestic violence and other services, respondent never progressed in her services to a point where the agency would consider allowing respondent to have unsupervised overnight visits. The agency still had concerns about respondent's ability to safely parent because of her substance abuse, failure to address domestic violence, and failure to complete parenting education.

¶ 10        At the conclusion of the hearing, the circuit court took the matter under

- 4 -

advisement to review the documentary evidence. On October 6, 2021, the circuit court held a joint hearing at which it announced its decision on the issue of fitness. The court found respondent unfit based on all the grounds alleged in the termination motions, and it also found the fathers of the minor children unfit. The court then proceeded to the best-interests hearing. Respondent's counsel moved to continue the hearing because respondent was hospitalized as a result of a "horrible motorcycle accident." The guardian *ad litem* objected to a continuance, noting numerous continuances had already happened in the case. The court found it was in the minor children's best interests to start the hearing but would allow respondent to present her case at a later date.

¶ 11　　　　The State presented Denk's testimony. It also asked the court to take judicial notice of the evidence at the fitness hearing, the December 2020 best-interests report, and the May and July 2021 reports filed by the Court Appointed Special Advocate (CASA). Denk testified the minor children had been living in their foster home since February 2019, and Denk found the home was safe and appropriate. She had no concerns about the foster mother's ability to provide basic necessities for the minor children. The minor children were school aged, and the foster mother met their educational needs. The minor children were "extremely bonded" with the foster mother and each other. They also had many pets in the home and outside activities. The minor children appeared to be very comfortable in the home and very loving with the foster mother. None of the minor children had expressed any doubt or uncertainty about remaining in the foster home. The foster mother was willing to provide permanency through adoption. Additionally, the attorney for CASA asked the circuit court to take judicial notice of the December 2020 and October 2021 CASA reports. After the State rested, the court continued the matter for respondent to present her case.

¶ 12 On February 10, 2022, the circuit court resumed the best-interests hearing. Respondent had new counsel. Denk noted respondent had e-mailed her and told her she was very sick. Denk e-mailed respondent the Zoom code to sign in to the hearing. Respondent's counsel moved to continue based on respondent's illness, and the court denied the motion to continue. The court noted no one attempted to sign in to Zoom. Since respondent had a new attorney, the court noted it was disregarding Denk's October 2021 testimony related to respondent. The State again had Denk testify and also presented the testimony of Julie Auestad, the new caseworker in the case, and Patricia B., the foster mother.

¶ 13 Denk testified J.J. was now 6 years old, Je.J. was 7 years old, T.J. was 12 years old, and Tr.J. was 13 years old. Their foster mother was their "grandma," and the minor children were very attached to her. Denk also testified Tr.J. refused to visit with respondent since coming into care. T.J. refused to attend several visits with respondent but not every visit. J.J. and Je.J. attended visits and did bond with respondent during those visits. Denk opined it was in the minor children's best interests to terminate respondent's parental rights. Auestad testified J.J. had informed her she wanted to stay with her foster mother. Je.J. had not expressed that desire but was very much bonded to her foster mother and felt safe there. T.J. did not want to go on any more visits with respondent and was very much bonded with her foster mother. She also opined it was in the minor children's best interests to terminate respondent's parental rights. Patricia testified she was respondent's stepmother and was divorced from respondent's father. Patricia was willing to provide permanency for the minor children. The CASA attorney presented a letter from Tr.J., in which Tr.J. stated she felt safe at her grandma's house while respondent had put her and her siblings in danger many times.

¶ 14 At the end of the hearing, the circuit court found the termination of respondent's

parental rights was in the minor children's best interests. That same day, the court entered a written order terminating respondent's parental rights to the minor children. The parental rights of the fathers were also terminated.

¶ 15 On March 1, 2022, respondent filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017). See Ill. S. Ct. R. 660(b) (eff. Oct. 1, 2001) (providing the rules governing civil cases also govern appeals from final judgments in all proceedings under the Juvenile Court Act, except for delinquency cases). Thus, this court has jurisdiction of the appeal pursuant to Illinois Supreme Court Rule 307(a)(6) (eff. Nov. 1, 2017).

¶ 16                                        II. ANALYSIS

¶ 17 Under section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West 2020)), the involuntary termination of parental rights involves a two-step process. First, the State must prove by clear and convincing evidence the parent is "unfit," as that term is defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). *In re Donald A.G.*, 221 Ill. 2d 234, 244, 850 N.E.2d 172, 177 (2006). If the circuit court makes a finding of unfitness, then the State must prove by a preponderance of the evidence it is in the minor children's best interests that parental rights be terminated. *In re D.T.*, 212 Ill. 2d 347, 366, 818 N.E.2d 1214, 1228 (2004).

¶ 18 Since the circuit court has the best opportunity to observe the demeanor and conduct of the parties and witnesses, it is in the best position to determine the credibility and weight of the witnesses' testimony. *In re E.S.*, 324 Ill. App. 3d 661, 667, 756 N.E.2d 422, 427 (2001). Further, in matters involving minors, the circuit court receives broad discretion and great deference. *E.S.*, 324 Ill. App. 3d at 667, 756 N.E.2d at 427. Thus, a reviewing court will not

disturb a circuit court's unfitness finding and best-interests determination unless they are contrary to the manifest weight of the evidence. See *In re Gwynne P.*, 215 Ill. 2d 340, 354, 830 N.E.2d 508, 516-17 (2005) (fitness finding); *In re J.L.*, 236 Ill. 2d 329, 344, 924 N.E.2d 961, 970 (2010) (best-interests determination). A circuit court's decision is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Gwynne P.*, 215 Ill. 2d at 354, 830 N.E.2d at 517.

¶ 19                                    A. Motion to Continue

¶ 20            Respondent first argues the circuit court abused its discretion when it did not grant her motion to continue the best-interests hearing due to her hospitalization. She contends she had a right to be present at all proceedings regarding her fitness and the best interests of the minor children. The State contends there was a continuance that was agreed to by the parties, including respondent's counsel. Thus, it contends that, since respondent's counsel agreed to continuing the case after the State's evidence, respondent cannot challenge the court's continuance on appeal. See *In re D.F.*, 208 Ill. 2d 223, 238, 802 N.E.2d 800, 809 (2003) (finding respondent forfeited a challenge to the court's use of an earlier date where the respondent had argued an earlier date or a later date started the nine-month period). In the alternative, the State argues the court did not abuse its discretion.

¶ 21            In this case, respondent's counsel sought to have the best-interests hearing held on another date due to respondent's hospitalization. The guardian *ad litem* objected, noting the case had been continued "many, many times." She proposed starting the hearing and then continuing it for respondent to present her case at a later hearing date. The court found it was in the minor children's best interests to start the hearing that day and would allow respondent to present what she wished at a continued hearing. The court asked "Okay?" After Jeffrey's attorney responded,

- 8 -

respondent's counsel said, "Thank you." After the close of the State's evidence, the court granted a continuance, only as to respondent and the two fathers. We disagree with the State the aforementioned facts clearly show respondent's counsel agreed to the court's procedure of hearing the State's case and then continuing the cause for respondent's case. As such, we will address the merits of respondent's argument.

¶ 22 Our legislature has recognized "serious delay in the adjudication of abuse, neglect, or dependency cases can cause grave harm to the minor and the family and that it frustrates the health, safety and best interests of the minor and the effort to establish permanent homes for children in need." 705 ILCS 405/2-14(a) (West 2020). In juvenile cases, "[t]he court may continue the hearing 'only if the continuance is consistent with the health, safety and best interests of the minor.' " *In re K.O.*, 336 Ill. App. 3d 98, 104, 782 N.E.2d 835, 841 (2002) (quoting 705 ILCS 405/2-14(c) (West 2000)). Further, a motion for a continuance must be filed 10 days prior to the hearing, or "upon the court's own motion and only for good cause shown." 705 ILCS 405/2-14(c) (West 2020). "It is within the juvenile court's discretion whether to grant or deny a continuance motion, and the court's decision will not be disturbed absent manifest abuse or palpable injustice." *K.O.*, 336 Ill. App. 3d at 104, 782 N.E.2d at 841. A litigant does not have an absolute right to a continuance. *K.O.*, 336 Ill. App. 3d at 104, 782 N.E.2d at 841. Unless the complaining party has been prejudiced, the denial of a motion to continue is not grounds for reversal. *K.O.*, 336 Ill. App. 3d at 104, 782 N.E.2d at 841.

¶ 23 Respondent cites a criminal case and a probation revocation case and notes she did not voluntarily waive her right to be present at the best-interests hearing. The sixth amendment right to confront witnesses explicitly limits its application to criminal proceedings. U.S. Const., amend. VI. Termination proceedings under the Juvenile Court Act are civil

- 9 -

proceedings, not criminal. *In re E.S.*, 246 Ill. App. 3d 330, 335, 615 N.E.2d 1346, 1349 (1993). However, termination proceedings do involve fundamental liberty interests and invoke some of the constitutional concerns implicated in criminal cases. *In re J.R.*, 342 Ill. App. 3d 310, 316, 794 N.E.2d 414, 420 (2003). Even if the confrontation clause is one of these concerns, it need not be strictly applied in termination proceedings. *In re H.B.*, 2022 IL App (2d) 210404, ¶ 61. In the civil context, courts generally look to whether there has "been a 'gross' deviation from fair procedure." *In re R.D.*, 2021 IL App (1st) 201411, ¶ 13.

¶ 24        Respondent fails to show how the circuit court made a gross deviation from fair procedure where the court found a complete continuance of the best-interests hearing was not in the best interests of the minor children due to several prior continuances. Additionally, respondent fails to set forth how she was prejudiced by the denial of her motion to continue. The circuit court heard the State's evidence and then continued the best-interests hearing to another date, at which respondent did not appear due to illness. No evidence suggested respondent attempted to participate in the continued hearing via Zoom, despite Denk stating she provided respondent with the Zoom code. Moreover, since respondent had a new attorney at the continued hearing, the circuit court disregarded the State's evidence addressing respondent at the initial best-interests hearing and had the State again present its evidence regarding respondent. Respondent was represented by counsel at the continued hearing, and counsel cross-examined the State's witnesses. Accordingly, we find the circuit court's denial of the motion to continue did not constitute manifest abuse or palpable injustice.

¶ 25                          B. Respondent's Fitness

¶ 26        Respondent also contends the circuit court erred by finding her unfit. The State contends its evidence was sufficient to prove respondent unfit. In this case, the circuit court

found respondent unfit on all three grounds alleged in the petition. One of the grounds was section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2020)), which provides a parent may be declared unfit if he or she fails "to make reasonable progress toward the return of the child[ren] to the parent during any 9-month period following the adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act." Illinois courts have defined "reasonable progress" as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046, 871 N.E.2d 835, 844 (2007) (quotin*g In re C.N.*, 196 Ill. 2d 181, 211, 752 N.E.2d 1030, 1047 (2001)). Moreover, they have explained reasonable progress as follows:

> " '[T]he benchmark for measuring a parent's "progress toward the return of the child[ren]" under section 1(D)(m) of the Adoption Act encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child[ren], and in light of other conditions which later became known and which would prevent the court from returning custody of the child[ren] to the parent.' " *Reiny S.*, 374 Ill. App. 3d at 1046, 871 N.E.2d at 844 (quoting *C.N.*, 196 Ill. 2d at 216-17, 752 N.E.2d at 1050).

Additionally, this court has explained reasonable progress exists when a circuit court "can conclude that *** the court, in the *near future*, will be able to order the child[ren] returned to parental custody. The court will be able to order the child[ren] returned to parental custody in the near future because, at that point, the parent *will have fully complied* with the directives previously given to the parent in order to regain custody of the child[ren]." (Emphases in

- 11 -

original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461, 577 N.E.2d 1375, 1387 (1991). We have also emphasized " 'reasonable progress' is an 'objective standard.' " *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88, 19 N.E.3d 227 (quoting *L.L.S.*, 218 Ill. App. 3d at 461, 577 N.E.2d at 1387).

¶ 27        In determining a parent's fitness based on reasonable progress, a court may only consider evidence from the relevant time period. *Reiny S.*, 374 Ill. App. 3d at 1046, 871 N.E.2d at 844 (citing *D.F.*, 208 Ill. 2d at 237-38, 802 N.E.2d at 809). Courts are limited to that period "because reliance upon evidence of any subsequent time period could improperly allow a parent to circumvent her own unfitness because of a bureaucratic delay in bringing her case to trial." *Reiny S.*, 374 Ill. App. 3d at 1046, 871 N.E.2d at 844. In this case, the petition alleged two nine-month periods, October 29, 2019, to July 29, 2020, and December 9, 2019, to September 9, 2020. We will address the first nine-month period.

¶ 28        Here, Denk testified she was a child welfare specialist and had been assigned the minor children's case in April 2019. Thus, she was the caseworker for the entirety of both nine-month periods and had first-hand knowledge of this case. The minor children came into care because respondent had left them in a car and went into a party. Respondent was asked to complete (1) a substance-abuse assessment, (2) parenting classes, (3) individual counseling, and (4) domestic-violence services. Denk testified respondent never completed a substance-abuse assessment but did inform Denk she was on a waitlist for inpatient substance-abuse treatment. As part of her substance-abuse services, respondent was to complete drug drops. Respondent did not consistently do the drug drops. Regarding parenting classes, respondent only attended a few and did not successfully complete the service. As to individual counseling, respondent only briefly engaged in family counseling at the end of 2019. Respondent did not attend any counseling in 2020. She did complete a mental-health assessment and regularly attended her

visitation with the minor children.  However, respondent never reached a point of unsupervised visitation, and Denk never considered unsupervised overnight visits.  Denk explained that, due to respondent's continued substance abuse and lack of engagement in services, respondent never made progress in the services to move forward.  The agency still had concerns about respondent's ability to parent due to respondent's substance abuse, her failure to address domestic violence, and her failure to complete parenting classes.

¶ 29            A review of the service plans also indicated respondent did not complete services.  State's exhibit No. 4, which was the February 4, 2020, service plan, covering the previous six-month period (August 2019 to February 2020), stated respondent had yet to complete a domestic-violence assessment.  She had missed seven drug drops during the review period and had two positive drops.  Respondent had not completed a substance-abuse assessment and parenting classes.  Additionally, respondent had not attended counseling since December 2019.  State's exhibit No. 5, which was the August 7, 2020, service plan (covering February to August 2020), stated respondent continued to report struggling daily with substances, drinking heavily, and using other substances.  Respondent had pending criminal charges for possession of methamphetamine and was in danger of losing her housing due to the criminal charges.

¶ 30            Respondent notes her ability to complete services was greatly hindered by the COVID-19 pandemic.  However, the pandemic did not start until halfway through the nine-month period.  Even during that first half of the nine-month period, respondent stopped attending counseling, failed to obtain a substance-abuse assessment, failed to obtain a domestic-violence assessment, did not successfully complete parenting classes, had a positive drug drop, and missed several other drug drops.  Moreover, respondent did not present any testimony at the fitness hearing about how the pandemic prohibited her from completing services or impacted her

in other ways.

¶ 31        Given the above evidence, the circuit court's finding respondent failed to make reasonable progress during the period of October 29, 2019, to July 29, 2020, was not against the manifest weight of the evidence.

¶ 32        Since we have upheld the circuit court's determination respondent met the statutory definition of an "unfit person" on the basis of respondent's failure to make reasonable progress (750 ILCS 50/1(D)(m)(ii) (West 2020)) during the nine-month period of October 29, 2019, to July 29, 2020, we do not address the other nine-month period and the other grounds for the unfitness finding.  See *In re Tiffany M.*, 353 Ill. App. 3d 883, 891, 819 N.E.2d 813, 820 (2004).

¶ 33                            C. Minor Children's Best Interests

¶ 34        Last, respondent challenges the circuit court's finding it was in the minor children's best interests to terminate her parental rights.  The State contends the circuit court's finding was not against the manifest weight of the evidence.

¶ 35        During the best-interests hearing, the circuit court focuses on "the child[ren]'s welfare and whether termination would improve the child[ren]'s future financial, social and emotional atmosphere."  *In re D.M.*, 336 Ill. App. 3d 766, 772, 784 N.E.2d 304, 309 (2002).  In doing so, the court considers the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2020)) in the context of the children's age and developmental needs.  See *In re T.A.*, 359 Ill. App. 3d 953, 959-60, 835 N.E.2d 908, 912-13 (2005).  Those factors include the following:  the children's physical safety and welfare; the development of the children's identity; the children's family, cultural, and religious background and ties; the children's sense of attachments, including continuity of affection for the children, the children's

feelings of love, being valued, security, and familiarity, and taking into account the least disruptive placement for the children; the children's own wishes and long-term goals; the children's community ties, including church, school, and friends; the children's need for permanence, which includes the children's need for stability and continuity of relationships with parent figures, siblings, and other relatives; the uniqueness of every family and each child; the risks attendant to entering and being in substitute care; and the wishes of the persons available to care for the children. 705 ILCS 405/1-3(4.05) (West 2020).

¶ 36       We note a parent's unfitness to have custody of his or her children does not automatically result in the termination of the parent's legal relationship with the children. *In re M.F.*, 326 Ill. App. 3d 1110, 1115, 762 N.E.2d 701, 706 (2002). As stated, the State must prove by a preponderance of the evidence the termination of parental rights is in the minor children's best interests. See *D.T.*, 212 Ill. 2d at 366, 818 N.E.2d at 1228. "Proof by a preponderance of the evidence means that the fact at issue *** is rendered more likely than not." *People v. Houar*, 365 Ill. App. 3d 682, 686, 850 N.E.2d 327, 331 (2006).

¶ 37       Here, the minor children had lived with their foster mother for four years, and the three oldest minor children voiced they wanted to live with the foster mother. Tr.J. had never attended a visit with respondent since she came into care. T.J. had refused to visit respondent on several occasions, and after her last visit with respondent, T.J. stated she never wanted to visit with respondent again. The minor children's ties were with the community in which the foster mother lived. The foster mother desired to provide permanency for the minor children. While respondent had a bond with the two younger minor children, the best-interests factors favored the termination of respondent's parental rights as to all four minor children.

¶ 38       Accordingly, we find the circuit court's conclusion it was in the minor children's

best interests to terminate respondent's parental rights was not against the manifest weight of the evidence.

¶ 39                          III. CONCLUSION

¶ 40          For the reasons stated, we affirm the Winnebago County circuit court's judgment.

¶ 41          Affirmed.