2022 IL App (1st) 211622-U

FIFTH DIVISION
July 22, 2022

No. 1-21-1622

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| *In re* K.J. and Z.H., minors, | ) Appeal from the Circuit Court of |
| | ) Cook County. |
|     Respondents-Appellees, | ) |
| | ) |
| (THE PEOPLE OF THE STATE OF ILLINOIS, | ) |
| | ) |
|     Petitioner-Appellee, | ) |
| | ) |
|     v. | ) Nos.   20 JA 1234 |
| | )        20 JA 1235 |
| J.F., | ) |
| | ) Honorable Andrea M. Buford, |
|     Respondent-Appellant). | ) Judge, presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held:*   The respondent is not entitled to a new adjudication hearing even though the circuit court judge was momentarily disconnected from the video conference hearing during the closing arguments, because the error was caught immediately and counsel was permitted to make the entire argument again. Conducting child protection hearing via videoconferencing software was permitted by court rules in effect at the time of the hearing, and did not deprive respondent of a fair trial. Affirmed.

¶ 2    Following a hearing, the circuit court adjudged two-year-old K.J. and three-year-old Z.H. wards of the court, finding both children neglected due to an injurious environment and abused due to the substantial risk of future injury.  Respondent J.F., the mother of K.J. and Z.H., appeals, contending that (1) she is entitled to a new adjudication hearing because the circuit court was momentarily and inadvertently disconnected from the video conference remote hearing during the closing arguments, and (2) conducting the adjudication hearing via videoconferencing software denied her a fair trial.  We affirm.

¶ 3                                              BACKGROUND

¶ 4    Beginning in March 2020, the Governor of the State of Illinois declared a state of emergency in response to the global COVID-19 pandemic and issued a series of executive orders limiting indoor and outdoor gatherings where social distancing measures could not be maintained.[1]

¶ 5    On March 23, 2020, the Circuit Court of Cook County entered a General Administrative Order, amended on September 3, 2020, providing in relevant part that: "all matters *** shall be conducted by video conference to the extent reasonably possible, subject to the limitations imposed by the Constitutions of the United States and the State of Illinois; at the discretion of the judge presiding, after considering party objections, proceedings may be conducted by teleconference, videoconference, in person, or a combination of those means ***."  Cook County Cir. Ct. Gen. Adm. Order 2020-07 (Sept. 3, 2020).

---

[1]    See, *e.g.*, Proclamation No. 2020-38, 44 Ill. Reg. 4744 (Mar. 9, 2020), https://www2.illinois.gov/sites/gov/Documents/CoronavirusDisasterProc-3-12-2020.pdf (disaster proclamation) [https:// perma.cc/W3T5-YM7W], Executive Order No. 2020-18 (Apr. 1, 2020), https://www. illinois.gov/government/executive-orders/executive-order.executive-order-number-18.2020.html (statewide 30-day stay-at-home order) [https://perma.cc/CF4V-9WWG].

¶ 6    In turn, our supreme court amended Rule 241 to provide that a court may, "upon request or on its own order, for good cause shown \*\*\*, allow a case participant to testify or otherwise participate in a civil trial or evidentiary hearing by video conferencing from a remote location." Ill. S. Ct. R. 241 (eff. May 22, 2020).  The committee comments to the amended rule stated that good cause is "likely to arise when a witness is unable to attend a trial for unexpected reasons, such as \*\*\* limited court operations \*\*\*."  Ill. S. Ct. R. 241, Committee Comments (rev. May 22, 2020).  Good cause is also established "where all parties agree that testimony should be presented by video conference."  *Id.*    The comments added that, although the circuit court has "broad discretion" to make this determination, it "should" nonetheless "take into consideration and balance any due process concerns" when deciding whether to allow remote testimony.  *Id.*  The comments, however, later state that the court "must" balance these and other relevant factors.  *Id.*

¶ 7    On August 31, 2020, the State filed a motion for temporary custody of and a petition for an adjudication of wardship regarding K.J. and Z.H.  The State alleged that the children were neglected pursuant to sections 2-3(1)(a), 2-3(1)(b), and 2-3(2)(ii) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(a) (West 2020)).  The factual basis underlying the State's claim was that respondent was admitted to the hospital on June 10, 2020, after police officers found her "disoriented lying in the street with [Z.H.] beside her."  Respondent was admitted for "self-protection and stabilization for presumed drug[-]induced psychosis."  After she was stabilized, respondent refused further treatment.  She and Z.H. were discharged to the care of respondent's mother, where respondent and her children resided.

¶ 8    On November 23, 2020, the Circuit Court of Cook County amended General Administrative Order No. 2020-07 due to the "evolving COVID-19 pandemic."  Cook County Cir. Ct. Gen. Adm. Order 2020-07 (Nov. 23, 2020).  The amended rule provided in relevant part as

follows: "except in extraordinary or compelling circumstances, all matters in all Districts and Divisions of the court shall be conducted by videoconference, subject to the limitations imposed by the constitutions of the United States and the State of Illinois ***." *Id.*

¶ 9    On August 20, 2021, the circuit court again amended General Administrative Order 2020-07. The amended order stated, "in pursuit of the best practices for conducting court proceedings in person, remotely, or in a hybrid of the two in all Districts and Divisions of the court, conducting proceedings with all persons physically present in court shall be preferred, with the understanding that each impending court proceeding may be evaluated to determine whether it is appropriate for some or all participants to appear remotely." Cook County Cir. Ct. Gen. Adm. Order 2020-07 (Aug. 20, 2021). The amended order further noted that, "except as required by constitutional requirements [*sic*], *** all types of proceedings except jury trials may be conducted telephonically or by videoconference." *Id.*

¶ 10    On September 23, 2021, the circuit court held an adjudicatory hearing via videoconference. No party, including respondent and her attorney, objected to the hearing being held remotely rather than in person. All of the following evidence was adduced at the hearing through stipulation. Respondent was the mother and had custody of two girls: K.J., who was born on August 1, 2019; and Z.H., who was born on August 1, 2018. The fathers of both K.J. and Z.H. were noncustodial.

¶ 11    Jeronda Harvey, an investigator with the Department of Children and Family Services (DCFS), was assigned to investigate a June 9, 2020, "hotline" call alleging neglect, and on that same date, she spoke with respondent at Mount Sinai Hospital in Chicago. At that time, K.J. was with respondent. Respondent provided only "limited information" and did not respond to most of the questions. Respondent initially stated that she lived with her boyfriend and others, but she

later denied having a boyfriend. Respondent admitted having two daughters, one of whom was K.J., and that she was brought to the hospital because "she was standing in the middle of the street."

¶ 12    DCFS investigator Heather Parker was also assigned to investigate the June 9 hotline call, as well as another hotline call on June 24, 2020, alleging "burns by neglect and medical neglect." Parker saw that K.J. had a "very bad" burn on the left foot and spoke to respondent. Respondent denied having anything to do with the burn and that the burn was caused when K.J. spilled hot grits on her foot. Respondent's mother told respondent about the injury two days prior.

¶ 13    Parker then left to meet respondent and K.J. at Stroger Hospital, but waited two hours for respondent to arrive with K.J. According to Parker, respondent's demeanor drastically changed since the last time she saw respondent, and she needed Stroger Hospital police to assist her getting respondent out of the car. Parker stated that she was concerned respondent was under the influence of some unknown substance.

¶ 14    Parker also described respondent as being "aggressive" with both children and noted that respondent pulled on K.J.'s injured foot. Although respondent was warned about her behavior, Stroger Hospital police nonetheless subsequently handcuffed respondent and took her into custody. DCFS took temporary custody of the children due to respondent's "erratic and aggressive behavior" at the hospital.

¶ 15    The stipulation also included respondent's testimony that, on June 24, 2020, (1) she took K.J. to Stroger Hospital, (2) no police officer assisted her in getting out of the vehicle when she arrived, and (3) she was detained by Stroger Hospital police once she was inside the hospital but was released shortly thereafter.

¶ 16    The parties further stipulated to the admission of K.J.'s medical records from Stroger Hospital. The records indicated that K.H. had been in her grandmother's care and was brought to

5

the hospital emergency department by the grandmother, respondent, and a "police escort" due to prior DCFS concerns. The report further noted that respondent was "escorted out by police."

¶ 17 The report noted K.J. presented with "partial thickness" second-degree burns with blisters and epidermal loss on her right hand, second-degree burns on her left foot, and additional burns on her right thigh. K.J.'s grandmother explained that the injuries occurred when K.J. reached for a plate of hot grits. The report noted, however, that K.J. was not brought to have her burns evaluated "until DCFS visited her today [June 24]." The report diagnosed "medical neglect" based upon the fact that the burn took place on June 22, but the grandmother did not seek care from either the emergency department or K.J.'s primary care physician. The report added that K.J. "fell from the top of a car while strapped in a car seat last month" and that K.J. was delayed with respect to her 6-month vaccines.

¶ 18 The parties then proceeded to closing arguments. The State argued in favor of a finding of both neglect and abuse with respect to both children. The assistant public guardian (appointed counsel for K.J. and Z.H.) asked for the same findings as the State.

¶ 19 Counsel for respondent asked the court to make "no findings." Counsel stated that the stipulation "lays out what kind of happened on these dates." Counsel then argued in essence that, since K.J.'s grandmother was caring for K.J. at the time of the burn, it was the grandmother's responsibility, and not respondent's, to take K.J. for medical care. Counsel then stated that the only evidence of neglect or abuse regarding Z.H. was respondent allegedly "acting aggressively" toward both children. Counsel reminded the court that respondent disputed that police had to help her out of the vehicle and that she was under the influence of some substance. Finally, counsel reiterated the points about K.J.'s grandmother being responsible for getting K.J. medical care and the lack of specific evidence regarding Z.H.

¶ 20 Next, counsel for the fathers solely asked the circuit court to find both fathers noncustodial. The State then began its rebuttal closing argument. The following colloquy then took place:

"[(ASSISTANT STATE'S ATTORNEY)]: Judge, I would again ask that you make findings that the People have met their— sorry, I don't see the judge.

THE CLERK: I think she's gone.

[(ASSISTANT PUBLIC GUARDIAN)]: She's gone.

THE CLERK: She's gone. If we could hold on a moment until she joins.

(Discussion off the record.)

THE COURT: Okay. [Counsel for respondent], you were talking? I'm sorry. Start all over again.

¶ 21 Counsel for respondent then restated her closing argument. Counsel initially stated, "The stipulation lays out a series of facts regarding possible neglect and medical neglect." Counsel then reiterated that K.J. was in her grandmother's care, which shifted the responsibility for K.J.'s medical care to the grandmother. Counsel then noted that, when respondent learned of K.J.'s burn, the burn could have begun to heal, and thus respondent may not have realized that medical care was necessary. Counsel emphasized that it would have been "clear" that medical care was necessary at the time of the burn, when K.J. was in her grandmother's care. Counsel then restated that there were no specific allegations regarding respondent's aggressive behavior toward Z.H.; rather, the sole example of aggressive behavior involved respondent allegedly pulling on K.J.'s burned foot.

¶ 22    Following counsel for respondent's argument, counsel for the fathers again asked that they be found noncustodial.  The State then began its rebuttal argument, addressing the argument regarding K.J. being in the care of her grandmother at the time of the burn and the lack of specific allegations regarding Z.H.  Respondent's counsel then asked for an additional response to the State's rebuttal argument.  The circuit court allowed the request, and counsel again argued that there should be no finding of neglect with respect to Z.H.

¶ 23    At the conclusion of the parties' arguments, the circuit court found that the State established "neglect injurious environment and substantial risk of injury" as to both children.  The court subsequently held a dispositional hearing, at the conclusion of which the court adjudged K.J. and Z.H. wards of the court, found respondent unable to care for them, found the children's fathers unable and unwilling to do so, placed the children in the custody of DCFS, but increased respondent's supervised visitation from once to three times per week.[2]  The court then found that the "appropriate goal in this case is return home [in] 12 months."  This appeal follows.

¶ 24                                    ANALYSIS

¶ 25                          Whether a New Hearing is Warranted

¶ 26   Respondent first contends that this court should grant her a new adjudicatory hearing because the judge disconnected from the video conference hearing during closing arguments. Respondent notes that no parties were physically present during the adjudicatory hearing, and when the judge temporarily lost connection during the closing argument of respondent's counsel, counsel had to make her closing argument again, but the argument was not "the same concise and persuasive argument she had the first time around."  Respondent then argues that, since there is a

_____

[2]  Respondent raises no issue regarding the dispositional or permanency findings.

"long-standing *per se* rule" that a judge's absence from a criminal trial proceeding warrants automatic reversal, automatic reversal and remand for a new adjudicatory hearing is warranted here, as well.[3] Respondent concedes that she failed to preserve this alleged error by not objecting during the hearing, but argues that the second prong of the plain error rule rescues this claim from forfeiture.

¶ 27 The purpose of forfeiture rules is to encourage parties to raise issues in the circuit court, which will ensure that both the circuit court has an opportunity to correct any errors prior to appeal and the complaining party does not obtain reversal through his or her own inaction. See *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14 (citing *People v. Denson*, 2014 IL 116231, ¶ 13). The plain error rule, however, bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either: (1) the evidence is close, regardless of the seriousness of the error; or (2) the error is serious, regardless of the closeness of the evidence. *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005); see also *In re Andrea D.*, 342 Ill. App. 3d 233, 242 (2003) (applying the plain error doctrine to forfeited challenges in cases involving the termination of parental rights) (citing *In re J.J.*, 201 Ill. 2d 236, 243 (2002)). Under the first prong, a defendant must prove "prejudicial error," *i.e.*, "there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him." *Herron*, 215 Ill. 2d at 187. Under the second prong, a defendant must prove that there was plain error that was so serious it affected the fairness of the defendant's trial and

---

[3] Although respondent makes vague due process arguments and references Illinois Supreme Court Rule 241 (Ill. S. Ct. R. 241 (eff. May 22, 2020)) and a circuit court general administrative order, she further notes that these arguments are more properly developed in the second issue she raises, which challenges the constitutionality of remote hearings. We therefore address those arguments within that second issue, *infra*.

"challenged the integrity of the judicial process." *Id.* Prejudice is presumed because of the importance of the right involved, regardless of the strength of the evidence. *Id.* However, before considering whether plain error applies, we must first determine whether any error occurred. *Id.*

¶ 28 It is well established that a presiding trial judge's total absence from a portion of a felony jury trial is "inherently prejudicial, not only to defendant's right to a fair trial but also to the integrity of the judicial process." *People v. Vargas*, 174 Ill. 2d 355, 366 (1996). As such, the complete absence from the proceedings results in *per se* reversible error, "which presumes prejudice, and, as such, warrants granting the defendant a new trial." *Id.* at 371. The *Vargas* court noted that "the significant public and private interests involved in a criminal jury trial" rendered the use of harmless-error analysis "ill-advisable." The court added, "A rule that a trial judge's absence from the proceedings is harmless would open the door to abuses which could hinder those interests and undermine public confidence in judicial proceedings." *Id.* at 372.

¶ 29 Here, however, the principle announced in *Vargas* does not apply to the unique facts of this case, because the policy concerns outlined in *Vargas* simply are not present here. In *Vargas*, the trial judge intentionally and physically left the proceedings during the presentation of evidence (see *id.* at 358-59), whereas here, the judge was inadvertently and briefly disconnected from the remote proceedings during a portion of respondent's closing argument. Automatic reversal, the relief granted in *Vargas*, will not prevent an unforeseen and inadvertent technical issue that causes the trial judge's temporary absence. Accord *People v. Sheley*, 2017 IL App (3d) 140659, ¶ 24-28.

¶ 30 Moreover, this case was not a felony jury trial, as in *Vargas*; rather, it was a stipulated civil bench trial—there was no live witness testimony. The portion of the trial that the judge missed here was respondent's first closing argument, which respondent was able to reargue in full when the judge reconnected to the video conference. Respondent acknowledges that her counsel was

10

permitted to make a full new argument, and in fact, that counsel did so, but respondent nonetheless complains that trial counsel's second argument had various "deficiencies" and was not identical to the first argument. Respondent's complaint is unavailing.

¶ 31    Respondent first notes that counsel's second argument—namely, that the stipulated facts indicated "possible neglect and medical neglect"—"gave away far more" than the first argument. This argument is meritless: counsel's second argument merely stated at the outset the facts showed *possible* neglect, but counsel proceeded to thoroughly argue to the contrary. Respondent then claims that counsel's statement in the second argument about K.J.'s burn (*i.e.*, that it may have started to heal by the time respondent became aware of it and thus respondent would not have realized that medical attention was required) "elided" respondent's stipulated testimony rebutting Parker's testimony (*i.e.*, that respondent had to be helped out of the police car and was apparently intoxicated). Contrary to respondent's claim, however, counsel's statement provided a possible explanation for respondent's otherwise incomprehensible failure to seek medical attention for her infant child's second-degree burns on her hand, foot, and thigh. Finally, respondent observes that counsel did not restate that K.J.'s burn did not show that Z.H. was in an injurious environment or at a substantial risk of injury. Counsel, however, pointed out that there were no allegations against Z.H. other than a vague allegation of respondent's "aggressive behavior" toward the children, and the only example of aggressive behavior that state alleged involved respondent pulling on K.J.'s foot. Thus, there was no substantial difference between the two arguments. Since there was no error, the is no plain error. See *Herron*, 215 Ill. 2d at 187. We must therefore honor respondent's forfeiture of this issue and reject her claim of error.

¶ 32                    The Constitutionality of Remote Hearings

¶ 33    Respondent also contends that conducting the proceedings via videoconferencing software denied her a fair trial. Respondent argues that, "on the[] facts" in this case, the use of videoconferencing software for child protection trials violates her right to due process of law. Respondent asks that we reverse the adjudication findings, vacate the dispositional order, and remand this matter for a new adjudicatory hearing. Respondent again concedes that she has forfeited this argument because it was never raised before the circuit court, but she argues that the first prong of the plain-error doctrine is warranted here because the evidence was closely balanced. Even assuming, *arguendo*, that the evidence was closely balanced, plain error review is improper here because there was no error. See *Herron*, 215 Ill. 2d at 187.

¶ 34    Parents have a fundamental liberty interest in the care, custody, and management of their child. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *In re D.T.*, 212 Ill. 2d 347, 363 (2004). This interest, moreover, does not "evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Santosky*, 455 U.S. at 753.

¶ 35    When a state seeks to terminate an individual's parental rights, there are two private interests are at stake: the parent's aforementioned interest and the child's interest in a " 'normal family home.' " *D.T.*, 212 Ill. 2d at 363 (quoting *Santosky*, 455 U.S. at 759). The State must provide parents with "fundamentally fair" procedures. *Santosky*, 455 U.S. at 753-54. To determine whether administrative procedures are sufficient under the constitution, we consider (1) the private interest affected, (2) the risk of erroneous deprivation of that interest and the probable value of substitute procedural safeguards, and (3) the State's interest and the fiscal and administrative burdens the State's procedures or substitute procedural requirements would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *In re M.H.*, 196 Ill. 2d 356, 365 (2001).

¶ 36     Here, as the State notes, this court has repeatedly held that the use of videoconferencing platforms satisfies procedural due process requirements.  See, *e.g.*, *In re Es. C.*, 2021 IL App (1st) 210197,  ¶¶ 24-25; *In re Aa. C.*, 2021 IL App (1st) 210639, ¶ 14; *In re R.D.*, 2021 IL App (1st) 201411, ¶ 21.  We find that these cases are well-reasoned and we see no reason not to follow them here.

¶ 37     Respondent, nonetheless, argues that the amended circuit court General Administrative Order and amended Rule 241 indicate that the proceedings should have been held in person unless the circuit court specifically applied a "balancing test", which respondent posits the circuit court did not do.

¶ 38     Respondent, however, seems to equate the word "preferred" with the word "required."  The amended General Administrative Order no. 2020-07 merely stated that in-person proceedings are *preferred*, but it immediately adds that every future court proceeding *may* be evaluated to determine whether remote appearance for some or all participants is appropriate.  Cook County Cir. Ct. Gen. Adm. Order 2020-07 (Aug. 20, 2021).  The next paragraph further explains that, "except [pursuant to] constitutional requirements, *all types of proceedings*" except for jury trials can be conducted either by telephone or videoconference.  (Emphasis added.)  *Id.*  This court has already held that there are no constitutional requirements prohibiting the proceeding at issue here, and since this was a stipulated bench trial and not a jury trial, the circuit court administrative order plainly allowed for this proceeding to take place via videoconference.

¶ 39     In addition, this proceeding conformed to Rule 241.  By its express terms, Rule 241 allows some or all participants to appear remotely upon a showing of good cause, which the committee comments explain exists when a witness cannot attend due to limited court operations.  See Ill. S. Ct. R. 241, Committee Comments (rev. May 22, 2020).  The rule further explains that good cause

is met when all parties agree to the presentation of testimony via videoconference. *Id.* Moreover, although the comments note that the court both "should" and "must" balance due process concerns and various other factors, the plain and unambiguous language of the rule grants the court "broad discretion" to make this determination but does not require any findings stated on the record. See *id.* Here, no party objected to the presentation of the stipulated evidence; thus, good cause was shown. In addition, court operations in this case, although not as limited as at the outset of the pandemic, they were nonetheless still substantially limited due to the ongoing pandemic. Finally, respondent provides nothing to indicate that the court failed to balance the various factors. Therefore, based upon the specific facts of this case, we reject respondent's argument that the proceedings did not comport with Rule 241. Respondent's final contention of error is meritless.

¶ 40    In so holding, we do not intend to denigrate the importance of the body of case law holding that absence of a judge from a trial can be reversible error. Respondent strongly relies on these cases, but the facts of those cases are inapposite. Here, there was no live testimony—merely the recital of various stipulations. Respondent does not claim that the circuit court did not hear the stipulations when they were read aloud, merely that the court did not hear a portion of the closing argument. The circuit court cured the error by acknowledging the glitch and directing counsel to repeat the closing argument. In sum, this case is no different from one where a court, sitting in a courtroom with all parties present, cannot hear a portion of testimony or an argument due to the interruption of a loud noise, disturbance, or a speaker's quiet tone of voice, and asks the speaker to repeat what he or she said.

¶ 41                                    CONCLUSION

¶ 42    Based upon the specific facts of this case, we reject respondent's contentions that (1) she is entitled to a new adjudication hearing when the circuit court was momentarily disconnected

from the remote hearing during a portion of closing arguments and (2) conducting child protection hearing via videoconferencing software denied her a fair trial. Accordingly, we affirm the judgment of the circuit court of Cook County.

¶ 43    Affirmed.