2023 IL App (1st) 230004-U

No. 1-23-0004

Order filed June 14, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| *In re* S.P., A MINOR, | ) |
| | ) Appeal from the |
| (THE PEOPLE OF THE STATE OF ILLINOIS, | ) Circuit Court of |
| | ) Cook County. |
| Petitioner-Appellee, | ) |
| | ) No. 22 JA 212 |
| v. | ) |
| | ) Honorable |
| J.F., | ) Andrea Buford, |
| | ) Judge, presiding. |
| Respondent-Appellant.) | ) |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice McBride and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1  *Held*:  We affirm the trial court's finding of abuse and neglect at the adjudication hearing and its finding that respondent was unable to care for the minor at the disposition hearing over respondent's contentions that both findings were against the manifest weight of the evidence.

¶ 2  Following an adjudication hearing, the trial court found that the minor, S.P., was neglected due to an injurious environment and abused due to a substantial risk of physical harm created by

respondent, J.F., her mother.[1] Following a disposition hearing, the court made S.P. a ward of the court with a permanency goal of returning home within 12 months. On appeal, respondent challenges the sufficiency of the evidence at the adjudication and disposition hearings. For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4    Respondent gave birth to S.P. on March 23, 2022. On March 28, 2022, the State filed a petition for adjudication of wardship, alleging that S.P. was neglected due to an injurious environment and abused due to a substantial risk of physical harm created by respondent. The petition alleged that, when S.P. was born, respondent had two other children in Department of Children and Family Services (DCFS) custody due to abuse and neglect, as well as one prior indicated report for inadequate supervision, substantial risk of physical injury, and an environment injurious to a child's health and welfare.[2] Respondent had been diagnosed with "borderline intellectual functioning and unspecified trauma and stress related disorder," and had a pending psychiatric evaluation. The trial court held a temporary custody hearing on March 28, 2022, and granted temporary custody of S.P. to the DCFS guardianship administrator.[3]

¶ 5                             A. Adjudication Hearing

¶ 6    The trial court held an adjudication hearing on September 27, 2022. The State moved into evidence a DCFS integrated assessment report dated December 1, 2020, regarding respondent and

---

[1] S.P.'s putative father, D.H., is not a party to this appeal and did not appear before the trial court. The trial court found him unwilling and unable to care for S.P.

[2] An indicated report is a report of abuse or neglect supported by credible evidence following a DCFS investigation. *In re J.S.*, 2020 IL App (1st) 191119, ¶ 20 n. 2.

[3] Neither the order nor the reports of proceedings from the March 28, 2022, temporary custody hearing are included in the record on appeal. However, an order dated April 1, 2022, states that an "order of temporary custody [was] entered with prejudice to the mother" on March 28, 2022.

her two children, K.J. and Z.H., who are S.P.'s older siblings. The integrated assessment states that respondent was psychiatrically hospitalized in June 2020 because she was acting erratically on the side of the road, with then-10-month-old K.J. in a vehicle nearby. While hospitalized, respondent admitted to use of phencyclidine (PCP) within the past two days. DCFS placed K.J. and then-22-month-old Z.H. with respondent's mother. K.J. suffered burns to her hand and foot while in her grandmother's care. Respondent reported the burns to DCFS and, several hours later, took K.J. and Z.H. to a hospital. However, respondent was intoxicated and aggressive towards her children at the hospital, so police handcuffed her and removed her from the facility. Police suspected that respondent was under the influence of PCP. DCFS then placed K.J. and Z.H. with a family friend. Respondent did not consistently participate in services or visitation, and she threatened the family friend and appeared at her home while intoxicated in an attempt to take back her children. Respondent also failed to provide adequate food, clothing, and diapers for the children, and refused to sign consent forms needed to obtain medical care for them. The integrated assessment also stated that respondent had been charged three times and convicted once for "dangerous drugs," with her most recent arrest for possession of a controlled substance occurring in November 2015.

¶ 7    DCFS took temporary custody of K.J. and Z.H. in August 2020. In September 2021, a juvenile court adjudicated K.J. and Z.H. abused and neglected due to an injurious environment and a substantial risk of physical injury. In November 2021, the juvenile court entered a disposition order finding that respondent was unable to care for K.J. and Z.H. and granting custody to the DCFS guardianship administrator with the right to place the children. The State moved the adjudication and disposition orders in K.J. and Z.H.'s case into evidence at S.P.'s adjudication hearing.

¶ 8    Maggie Beckett testified that she was a caseworker employed by Lydia Home Association assigned K.J. and Z.H.'s case, and then to S.P.'s case when she was born. In the siblings' case, Beckett referred respondent for a parenting class, a substance abuse class, random drug testing, domestic violence services, a psychiatric assessment, and individual therapy. Respondent completed a substance abuse assessment in December 2020, and all her drug tests were negative. She also completed parenting classes in April 2021 and continued with parenting coaching through S.P.'s birth in March 2022. Respondent was unsuccessfully discharged from individual therapy in December 2021, but restarted it in March 2022 and completed a psychiatric evaluation the day before S.P. was born. As of S.P.'s birth, Beckett had not received the results of the psychiatric evaluation. Those results would determine whether respondent should be on psychotropic medication, which would factor into a planned parenting capacity assessment. Respondent had not completed domestic violence services at the time of S.P.'s birth. Respondent was having weekly supervised visits with K.J. and Z.H. but had not progressed to unsupervised visitation. Beckett recommended protective custody for S.P. due to respondent's outstanding services, particularly the psychiatric evaluation and parenting capacity assessment, as well as "a few concerns during visits that [she] would be overwhelmed or would not discipline the children."

¶ 9    The State sought an adjudication of neglect based on an injurious environment and abuse based on a substantial risk of physical harm. The State argued that S.P.'s siblings had already been adjudicated abused and neglected and, at the time of S.P.'s birth, respondent had not completed the services for which she was referred in the siblings' case, nor had she progressed to unsupervised visitation with S.P.'s older siblings. Respondent argued that there was no evidence that she could not care for S.P. specifically. Rather, she contended that the State's evidence

pertained only to her difficulty caring for S.P.'s siblings, and that she "had done every service that she could up until" S.P.'s birth.

¶ 10    The court found that S.P. was neglected and abused due to an injurious environment and a substantial risk of physical injury, respectively. The court explained that respondent "had two other minors in care with findings entered against [her]. One child had a burn, and [respondent] was allegedly aggressive with the children. The children were still in care at the time this minor was born, as [respondent] had not completed all of her services." The court also noted that respondent's "mental health issues [were] still unresolved."

¶ 11                              B. Disposition Hearing

¶ 12    The trial court held a disposition hearing on November 29, 2022. It took judicial notice of the evidence and findings at the adjudication hearing. Nathan Ghantous testified that he was a caseworker employed by Lydia Home Association, and that he was assigned to S.P. and her siblings' cases when S.P. was two months old. At the time of the disposition hearing, S.P. was eight months old and was placed in a traditional foster home, separately from her siblings. The foster home was safe and appropriate; there were no signs of abuse, neglect, or corporal punishment. Aside from minor concerns regarding motor skills, S.P. was developmentally on target. She was scheduled to begin developmental therapy in December 2022, and to be evaluated by a speech therapist and a nutritionist thereafter.

¶ 13    Ghantous referred respondent for counseling, a new psychiatric evaluation, monthly drug tests, a substance abuse screening to assess long-term damage from past drug use, in-person parenting coaching, and domestic violence services. Respondent was attending and making progress in individual therapy at the time of the disposition hearing. All monthly drug tests to that

point were negative and Ghantous had no concerns that respondent was using illegal substances. However, respondent had not completed the substance abuse screening because she had not yet signed a release needed to do so.

¶ 14    Respondent attended weekly supervised visits with S.P. but had not progressed to unsupervised visits due to concerns that she was not feeding S.P. enough during those visits. In the summer of 2022, S.P. was diagnosed with failure to thrive and was hospitalized to gain weight, after which she was moved from a fictive kin placement to a foster placement. S.P. lost weight again in September 2022 and was placed on a "bolstered diet" to facilitate weight gain. Case aides reported that that respondent was not feeding S.P. enough during visits, and S.P.'s foster mother stated that S.P. was distressed after visits with respondent because her feeding schedule had been disrupted. This issue began approximately two months prior to the disposition hearing. Ghantous and a case aide tried to speak with respondent about the issues with S.P.'s feeding schedule but respondent refused to do so. In addition, respondent had not responded to Ghantous's request to conduct a safety assessment of her home. Ghantous convened a staffing that concluded that it would be in S.P.'s best interest to become a ward of the court because she was "growing and thriving in her foster placement, and [because respondent] need[ed] more time to engage in services before return home is made appropriate."

¶ 15    The guardian *ad litem* (GAL) moved two exhibits into evidence.[4] First, a DCFS permanency report regarding S.P. dated November 28, 2022, stated that respondent had made

---

[4] The GAL moved to admit a total of six exhibits at the disposition hearing; respondent objected to four of them. The court stated that it was admitting two of the six exhibits: "[S.P.]'s court report" and her service plan. However, the court's impound order includes four GAL exhibits: S.P.'s permanency report, the integrated assessment, the August 13, 2022, service plan, and a Cook County Juvenile Court Clinic report regarding respondent. The court's oral ruling controls (see *In re Tr. O.*, 362 Ill. App. 3d 860, 868 (2005)), so we will only consider the two GAL exhibits that the court stated it admitted.

satisfactory progress and reasonable efforts toward reunification goals. However, it concluded that respondent "need[ed] more time to engage in services and learn how to appropriately engage with [S.P.] *** especially in regards to feedings." DCFS requested discretion to allow unsupervised visitation and recommended a permanency goal of return home within 12 months. Second, a DCFS service plan dated August 13, 2022, stated, in relevant part, that respondent was diagnosed with "Borderline Intellectual Functioning" and "Unspecified Trauma – and Stressor-Related Disorder" on July 28, 2021. As of August 2022, she lived in her own apartment and was unemployed, but was undergoing job training. Respondent was making satisfactory progress toward reunification and had "engaged well in all services."

¶ 16    Respondent moved six exhibits into evidence. A psychiatric assessment from Oak Park Counseling Center stated that, on March 21, 2022, respondent denied symptoms of anxiety or depression and was advised to return after the birth of S.P. A May 9, 2022, letter from Oak Park Counseling Center stated that respondent had attended four sessions of weekly individual therapy as of that date. She was "engaged in treatment and [was] dedicated to working on herself," "identified that she wants to work on being a better mother," and her treatment goals included "[p]rocessing trauma history and improving personal relationships by working on boundaries." A certificate from Family Focus confirmed that respondent successfully completed parenting education classes on April 23, 2021, and a letter from the same agency confirmed that respondent successfully completed parent coaching services on June 1, 2022. A letter from Mujeres Latinas en Acción stated that respondent attended one domestic violence services session on April 7, 2022. Case aide notes regarding six visits between respondent and her children from April 6, 2022, to

May 25, 2022, reflected no issues in respondent's interactions with S.P. or her sisters, including feeding.

¶ 17    The State argued that respondent was unable to care for S.P. and that S.P. should become a ward of the court due to respondent's ongoing mental health treatment and concerns about proper feeding during her visits with S.P. Respondent argued that she had completed a psychiatric evaluation, parenting classes, and coaching, and was engaged in individual therapy. She also noted that no eyewitness to her visits with S.P. had testified about the alleged concerns with how she was feeding S.P., and that proper feeding had never been a concern with S.P.'s older siblings.

¶ 18    The court concluded that it was in S.P. and the public's best interest for S.P. to become a ward of the court. The court found that respondent was unable to care for S.P. and that reasonable efforts could not eliminate the need for S.P.'s removal from her mother's care, and that reunification services were unsuccessful. The court set a permanency goal of return home within 12 months.

¶ 19    Respondent timely appealed.

¶ 20                                      II. ANALYSIS

¶ 21    Respondent contends that the trial court's rulings at the adjudication and disposition hearings were against the manifest weight of the evidence. The Juvenile Court Act of 1987 (the Act) (705 ILCS 405/1-1 *et seq.* (West 2022)) establishes the procedures and criteria for determining whether to remove a minor from her parent's custody and whether to make that minor a ward of the court. *In re Arthur H.*, 212 Ill. 2d 441, 462 (2004). The trial court uses a two-step process to make that determination. *In re A.P.*, 2012 IL 113875, ¶ 18. First, the court holds an adjudication hearing to determine whether the minor is abused, neglected, or dependent. *Id.* ¶ 19;

705 ILCS 405/2-21(1) (West 2022). If the court finds that the minor is abused, neglected, or dependent, then it holds a disposition hearing to determine whether it is in the minor and the public's best interest for the minor to become a ward of the court. *In re A.P.*, 2012 IL 113875, ¶ 21; 705 ILCS 405/2-21(2) (West 2022).

¶ 22    Before turning to the merits of this case, we must address the role that this court's decision in *In re K.J.*, 2022 IL App (1st) 211622-U, plays, as both the GAL and the State's briefs cite it. *In re K.J.* arose from respondent's appeal of the adjudication order in the case involving K.J. and Z.H., S.P.'s older siblings. *In re K.J.*, 2022 IL App (1st) 211622-U, ¶ 2. This court affirmed the trial court's adjudication that K.J. and Z.H. were abused and neglected over respondent's contention that she was entitled to a new adjudication hearing due to videoconference software errors during the original adjudication hearing. *Id.* As noted above, the adjudication of abuse and neglect in K.J. and Z.H's case formed the basis of the trial court's finding of anticipatory neglect in this case. The GAL's brief cites *In re K.J.* for facts about the 2020 incident in which K.J. suffered burn injuries while in her grandmother's care. Both the GAL and the State and argue that respondent is estopped from contesting the findings of abuse and neglect in K.J. and Z.H.'s case because she did not contest the sufficiency of the evidence on appeal in *In re K.J.*

¶ 23    *In re K.J.* is an unpublished order under Supreme Court Rule 23. We cannot rely on it, and the parties cannot cite it, "except to support contentions of double jeopardy, *res judicata*, collateral estoppel, or law of the case," or as persuasive authority if the order was issued after January 1, 2021. See Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021). The GAL's citation of *In re K.J.* for its factual background is not one of the proper uses of a Rule 23 order. We will only consider evidence that is in the record on appeal (see *Parikh v. Gilchrist*, 2017 IL App (1st) 160532, ¶ 4), not the facts

that are summarized in *In re K.J.* Furthermore, there is no need to estop respondent from relitigating the findings of abuse and neglect with respect to K.J. and Z.H. because she does not seek to do so. Respondent only challenges the sufficiency of the evidence at the adjudication and disposition hearings regarding S.P. This court's decision in *In re K.J.* plays no role in the resolution of the case before us now.

¶ 24                                    A. Adjudication Hearing

¶ 25     Respondent first contends that the trial court's adjudication that S.P. was abused and neglected was against the manifest weight of the evidence. At an adjudication hearing, the trial court determines whether the minor is abused, neglected, or dependent. 705 ILCS 405/2-18(1) (West 2022). The State must prove abuse and neglect by a preponderance of the evidence, meaning that the allegations of abuse and neglect are more probably true than not. *In re Arthur H.*, 212 Ill. 2d at 463. The trial court considers the minor's status as of the time at which the State filed its petition. *In re Kenneth D.*, 364 Ill. App. 3d 797, 804 (2006). A neglected minor is any minor under 18 years of age whose environment is injurious to his or her welfare. 705 ILCS 405/2-3(1)(b) (West 2022). Neglect means "the failure to exercise the care that circumstances justly demand, and encompasses both willful and unintentional disregard of parental duty." *In re Jordyn L.*, 2016 IL App (1st) 150956, ¶ 28. The term "injurious environment" is "an amorphous concept that cannot be defined with particularity, but has been interpreted to include the breach of a parent's duty to ensure  a safe and nurturing shelter for h[er] children." *In re Kamesha J.*, 364 Ill. App. 3d 785, 793 (2006). An "abused child" is one whose parent "creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement,

impairment of emotional health, or loss or impairment of bodily function." 705 ILCS 405/2-3(2)(ii) (West 2022).

¶ 26    The State may present a theory of anticipatory neglect, seeking to protect not only children who are direct victims of abuse or neglect, but also children who are likely to be subjected to abuse or neglect because they live, or in the future may live, with someone who has abused or neglected another child. *In re Arthur H.*, 212 Ill. 2d at 468. "Although the neglect of one child does not conclusively show the neglect of another child, the neglect of one minor is admissible as evidence of the neglect of another minor under a respondent's care." *In re Kenneth D.*, 364 Ill. App. 3d at 801. The trial court should consider both the circumstances surrounding the previously neglected siblings and the care and condition of the child in the petition at issue. *In re Arthur H.*, 212 Ill. 2d at 468. Each case of anticipatory neglect must be decided on its own facts. *In re J.S.*, 2020 IL App (1st) 191119, ¶ 73.

¶ 27    We review the trial court's findings of abuse and neglect under a manifest weight of the evidence standard. *In re Alexis H.*, 401 Ill. App. 3d 543, 551 (2010). We give the trial court's findings deference because it is in a better position to observe the witnesses and evaluate their credibility. *In re Zoey L.*, 2021 IL App (1st) 210063, ¶ 32. We will not disturb the trial court's findings unless the record clearly demonstrates that the court should have reached the opposite conclusion or that the court's ruling is unreasonable, arbitrary, and not based on the evidence. *Id.* We can affirm the trial court's ruling if any of its bases of abuse or neglect may be upheld. *In re Abel C.*, 2013 IL App (2d) 130263, ¶ 28 (citing *In re Faith B.*, 216 Ill. 2d 1, 14 (2005)).

¶ 28    We find that the trial court's adjudication of abuse and neglect was not against the manifest weight of the evidence. There was no dispute that S.P.'s siblings, K.J. and Z.H., were adjudicated

to be abused and neglected in the fall of 2021, just a few months before S.P.'s birth in March 2022. The abuse and neglect that led to that adjudication occurred in the summer of 2020, fewer than two years before S.P.'s birth. Beckett's testimony established that, as of S.P.'s birth, respondent's psychiatric evaluation was incomplete, and whether she would be prescribed psychotropic medication was still to be determined. Her parenting capacity assessment was also incomplete, and she had not progressed to unsupervised visitation with S.P.'s siblings. Furthermore, Beckett's integrated assessment report provided a detailed review of the facts that led to the findings of abuse and neglect in late 2021. The report reflects multiple serious parenting issues in the two years leading up to S.P.'s birth, including respondent's psychiatric hospitalization, her use of PCP, and her intoxication around and aggression toward S.P.'s siblings and their foster parent. Respondent's recent abuse and neglect of S.P.'s siblings, combined with her outstanding services and Beckett's concerns about her ability to care for S.P., supported the trial court's ruling based on a theory of anticipatory neglect. Particularly compelling is the uncertainty regarding respondent's mental health and whether she needed to be taking psychotropic medication. The trial court was correct to adjudicate S.P. abused and neglected based on the lack of resolution of those issues. See *In re Tyianna J.*, 2017 IL App (1st) 162306, ¶ 54 (the respondent's ongoing mental health issues and parenting deficiencies with respect to the minor's siblings supported a finding of anticipatory neglect at the adjudication hearing).

¶ 29    Respondent cites *In re Edricka C.*, 276 Ill. App. 3d 18 (1995), for the proposition that a showing of anticipatory neglect based on a parent's prior abuse of a child's sibling "is not permanent; it weakens over time, and it can be overcome." *In re Edricka C.*, 276 Ill. App. 3d at 28. As a general principle, that is true. However, it does not change our decision in this case.

Respondent's neglect and abuse of S.P.'s siblings occurred in the summer of 2020, fewer than two years before S.P.'s birth. *In re Edricka C.* involved abuse and neglect of the minors' siblings in 1987 and 1989; the minors at issue were born in 1991 and 1992. *In re Edricka C.*, 276 Ill. App. 3d at 21-22. The passage of two to five years since prior sibling abuse might weigh against a finding of anticipatory neglect, but the passage of fewer than two years is not as significant. More importantly, there was no indication that the primary cause of the prior sibling abuse in this case, respondent's mental health issues, was resolved in the period between respondent's abuse of S.P.'s siblings and S.P.'s birth. Respondent's ongoing mental health issues are the decisive factor that distinguish this case from *In re Edricka C.*, which did not involve such concerns.

¶ 30    Respondent also challenges the trial court's reliance on the burn that K.J. suffered while in her grandmother's care. Respondent's argument on this point is not clear. On the one hand, respondent suggests that there was minimal evidence of the burn incident before the trial court, so the court should not have assigned any weight to that incident. On the other hand, respondent claims that the evidence showed that she properly reported the burn injuries to DCFS and complied with DCFS's instructions to take K.J. to the hospital, and that the burn injuries fully healed. Respondent's implication appears to be that the burn incident was evidence favorable to her. Respondent also insists that she was not intoxicated or aggressive when she took K.J. to the hospital, but argues that, even if she was, there was no evidence that her intoxication and aggression were still ongoing issues at the time of S.P.'s birth. We cannot understand what conclusion respondent wants us to draw from the evidence of the burn incident. At most, these underdeveloped arguments show that reasonable factfinders could weigh the burn incident differently. The trial court's view of the burn incident as weighing in favor of anticipatory neglect

was not unreasonable or arbitrary, nor was its ultimate adjudication of abuse and neglect. Accordingly, we affirm the trial court's adjudication of abuse and neglect.

¶ 31                                    B. Disposition Hearing

¶ 32    Respondent also contends that the trial court's finding that she was unable to care for S.P. was against the manifest weight of the evidence. The purpose of the disposition hearing is to determine whether it is in the best interest of the minor and the public for the minor to become a ward of the court. *In re A.P.*, 2012 IL 113875, ¶ 21; 705 ILCS 405/2-21(2) (West 2022). The trial court may make the minor a ward if it finds that the parent at issue is unable, unwilling, or unfit, for some reason other than financial circumstances alone, to care for, protect, train, or discipline the minor, and that the health, safety, and that the best interests of the minor will be jeopardized if she remains in her parent's custody. *In re Harriett L.-B.*, 2016 IL App (1st) 152034, ¶ 30; 705 ILCS 405/2-27(1) (West 2022). A finding on any one of the grounds is sufficient to make the minor a ward of the court. *In re Harriett L.-B.*, 2016 IL App (1st) 152034, ¶ 56. We will reverse the trial court's ruling at the disposition hearing if its factual findings are against the manifest weight of the evidence, or if the court abused its discretion by choosing an inappropriate disposition order. *Id.* ¶ 30.

¶ 33    The trial court's disposition order was not against the manifest weight of the evidence. The evidence established a specific and concrete reason why it was in S.P.'s best interest to become a ward of the court rather than returning to respondent's custody: respondent needed more time to learn how to feed S.P. properly and demonstrate that she could do so. This concern was not speculative. S.P. had been diagnosed with failure to thrive and hospitalized to gain weight in the summer of 2022, and issues with her weight continued to at least September 2022. Moreover,

S.P.'s foster mother reported that S.P. was distressed after visits with respondent because her feeding schedule had been disrupted. Compounding this concern was respondent's reluctance to speak with Ghantous and case aides about S.P.'s feeding schedule. Ensuring a child's proper nutrition is one of the most fundamental responsibilities of a parent, and it was reasonable for the trial court to conclude that it was not in S.P.'s best interest to return to her mother's care as of November 2022.

¶ 34     Respondent argues that the evidence established that she was engaged in services at the time of the disposition hearing and was doing everything that she was supposed to do at that point. Even if that is true, it does not mean that respondent was fully able to care for S.P. as of November 2022, or that S.P.'s best interest was being in respondent's custody, which is the central issue at a disposition hearing. See 705 ILCS 405/2-27(1) (West 2022). Respondent's completion of some, but not all recommended services does not mean that the trial court's disposition order was against the manifest weight of the evidence. See *In re Kamesha J.*, 364 Ill. App. 3d at 795-96. It was reasonable for the court to conclude that S.P.'s best interest was remaining a ward of the court while respondent completed recommended services. See *In re Chelsea H.*, 2016 IL App (1st) 150560, ¶¶ 87, 90. Accordingly, we affirm the trial court's ruling at the disposition hearing.

¶ 35                                III. CONCLUSION

¶ 36     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 37     Affirmed.